UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------X

DAN ANDREW COTTEN,

Plaintiff,

-against-

ALTICE USA, INC.,

Defendants.

1:19-cv-01534-RJD-ST

--------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

JACKSON LEWIS P.C.
*ATTORNEYS FOR DEFENDANT*
58 South Service Road, Suite 250
Melville, New York 11747
(631) 247-0404

Attorney of Record:
  Brendan Sweeney, Esq.

# TABLE OF CONTENTS

**PAGE(S)**

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ..........................................................................................................2

    I.    UNDISPUTED FACTS ....................................................................2

        A.    The Severance Plan and the Severance Benefits Policy ........2

        B.    The Severance Plan Was in Place Before, During and After Plaintiff's Employment ..................................................4

        C.    Plaintiff Was Not Designated as a Participant Under the Plan and He Did Not Exhaust the Plan Remedies ................5

    II.    PROCEDURAL POSTURE .............................................................5

SUMMARY JUDGMENT STANDARD .............................................................6

    ARGUMENT

    I.    THE SEVERANCE BENEFITS POLICY IS GOVERNED BY THE SEVERANCE PLAN ...............................................................7

    II.    COUNTS I AND II ARE PREEMPTED BY ERISA ......................9

        A.    Plaintiff's State Law Claims "Relate to" an ERISA-governed Severance Plan ....................................................9

        B.    Plaintiff's State Law Claims Are Preempted Because They Are Predicated Upon Defendant's Denial Of Benefits ................12

            1.    Plaintiff's Claims Further Satisfy *Davila* Because They Qualify As "Colorable Claims" ......................................12

            2.    Plaintiff's Allegations Do Not Implicate Any Other Independent Legal Duty Beyond the Plan ......................13

    III.    THE REMAINING CLAIMS UNDER ERISA (COUNTS III-V) SHOULD BE DISMISSED FOR LACK OF STANDING ..............14

    IV.    EVEN IF PLAINTIFF WAS A PARTICIPANT—HIS ERISA CLAIMS ARE STILL SUBJECT TO DISMISSAL ........................15

i

A.     Count III Should Be Dismissed Because Plaintiff Never
Exhausted The Plan's Administrative Procedures ................16

B.     Count IV Should Be Dismissed Because Plaintiff Never
Requested Plan Documents From The Plan Administrator ...17

C.     Count V Should Be Dismissed Because It Is Duplicative
Of Counts III and IV ............................................................18

CONCLUSION ....................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila*,
  542 U.S. 200 (2004) .................................................................................9, 11, 12, 13

*Alessi v. Raybestos-Manhattan, Inc.*,
  451 U.S. 504 (1981) ...............................................................................................10

*Arditi v. Lighthouse Int'l*,
  676 F.3d 294 (2d Cir. 2012) ............................................................................11, 12

*Biomed Pharms., Inc. v. Oxford Health Plans (NY), Inc.*,
  775 F. Supp. 2d 730 (S.D.N.Y. 2011) ...................................................................18

*Cacoperdo v. Hartford Life Ins. Co.*,
  10 Civ. 7847 (RPP), 2011 U.S. LEXIS 115003 (S.D.N.Y. Oct. 5, 2011) .............10

*Carey v. Crescenzi*,
  923 F.2d 18 (2d Cir. 1991) ......................................................................................7

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................6

*Cigna Corp. v. Amara*,
  563 U.S. 421 (2011) ...............................................................................................14

*D'Iorio v. Winebow, Inc.*,
  920 F. Supp. 2d 313 (E.D.N.Y. Jan. 18, 2013) .....................................................17

*DeRogatis v Bd. of Trs. of the Welfare Fund of the Int'l Union of Operating
  Eng'rs Local 15 (In re DeRogatis)*,
  904 F.3d 174 (2d Cir. 2018) ....................................................................................7

*In re Estate of Grant v. Interface Solutions, Inc.*,
  11-cv-1452, 2012 U.S. Dist. LEXIS 46082 (N.D.N.Y Apr. 2, 2012) ....................11

*Gilbert v. Burlington Indus., Inc.*,
  765 F.2d 320 (2d Cir. 1985) ....................................................................................8

*Gill v. Bausch & Lomb Supplemental Ret. Income Plan I*,
  594 Fed. Appx. 696 (2d Cir. 2014) ..................................................................14, 15

*Ingersoll-Rand Co. v. McClendon*,
  498 U.S. 133 (1990) ...............................................................................................11

iii

*Klotz v. Xerox Corp.*,
  332 Fed. Appx. 668 (2d Cir. 2009) ...................................................................16

*Knight v. U.S. Fire Ins. Co.*,
  804 F.2d 9 (2d Cir. 1986), *cert. denied*, 480 U.S. 932 (1987) ...................................6

*Marcella v. Capital Dist. Physicians Health Plan, Inc.*,
  47 F. Supp. 2d 289 (N.D.N.Y 1999), *rev'd. on other grounds*, 293 F.3d 42 (2d
  Cir. 2002) .................................................................................................................12

*Martori Brothers Distributors v. James-Massengale*,
  781 F.2d 1349 (9th Cir. 1986) .................................................................................12

*Metropolitan Life Ins. Co. v. Massachusetts*,
  471 U.S. 724 (1985)..................................................................................................10

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
  514 U.S. 645 (1995)....................................................................................................9

*Protocare of Metro. N.Y. v. Mutual Ass'n Adm'rs*,
  866 F. Supp. 757 (S.D.N.Y. 1994) ..........................................................................14

*Sejman v. Warner-Lambert Co.*,
  845 F.2d 66 (4th Cir. 1988) ......................................................................................10

*Shaw v. Delta Airlines*,
  463 U.S. 85 (1983)....................................................................................................10

*Smith v. Dunham-Bush, Inc.*,
  959 F.2d 6 (2d Cir. 1992)..........................................................................................11

*Varity Corp v. Howe*,
  516 U.S. 489 (1996)..................................................................................................18

*Wenzel v. Amalgamated Bank*,
  No. 93 Civ. 2364, 1996 U.S. Dist. LEXIS 9947 (S.D.N.Y. July 8, 1996)................8

*Wickman v. Nw. Nat'l Life Ins. Co.*,
  No. 86-1895-WF, 1987 U.S. Dist. LEXIS 9633 (D. Mass. Oct. 22, 1987) ..............8

*Zarringham v. UFCW Local 1500 Welfare Fund*,
  906 F. Supp. 2d 140 (E.D.N.Y. 2012) ................................................................16, 17

**Statutes**

29 U.S.C. § 1001(b) .........................................................................................................9

29 U.S.C. § 1023.............................................................................................................8

29 U.S.C. § 1024(b)(4) ..................................................................................................18

29 U.S.C. §§ 1132(a) ........................................................................................14

29 U.S.C. § 1132(a)(1)(B) ................................................................................13

29 U.S.C. § 1144(a) ..........................................................................................10

29 U.S.C. § 1144(c)(1) ......................................................................................10

Employee Retirement Income Security Act of 1974 ..........................................2

ERISA ..................................................................................................... *passim*

ERISA § 103 ........................................................................................................8

ERISA § 104(b)(4) ......................................................................................17, 18

ERISA § 502 ................................................................................................14, 15

ERISA § 502(a) ...........................................................................................11, 14

ERISA § 502(a)(1) ..............................................................................................5

ERISA § 502(a)(1)(A) ...................................................................................5, 17

ERISA § 502(a)(1)(B) .........................................................................11, 16, 17

ERISA § 502(a)(3) ...................................................................................5, 15, 19

ERISA § 502(a)(c) .............................................................................................17

ERISA Title I .......................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 56(a) ...........................................................................................7

Fed. R. Civ. P. 56(c) ...........................................................................................6

Local Rule 56.1 ...................................................................................................2

Op., ECF No. 31 ..................................................................................................6

Order, ECF No. 31, p. 7 ......................................................................................1

Rule 56 ................................................................................................................7

## PRELIMINARY STATEMENT

Plaintiff Andrew Cotten ("Plaintiff") is seeking to obtain severance benefits that were offered by Defendant Altice USA, Inc. ("Altice") subject to the terms of an ERISA severance plan.  Plaintiff's Second Amended Complaint ("SAC") claims "this is an action for breach of contract arising out of Altice's failure to pay Plaintiff the severance compensation to which he is lawfully entitled."  SAC, ECF No. 15, ¶5.  The "contract" on which Plaintiff's claim is based is a Severance Benefits Policy published by Altice to its employees.  *Id.* ¶ 6; *see also* Severance Benefits Policy, ECF No. 15-1.  The Severance Benefits Policy expressly states that it is "governed by the Company's ERISA-covered severance pay plan and the associated plan document/summary plan description."

As the Court noted in its Order denying Altice's Motion to Dismiss, whether the severance benefits sought by Plaintiff are governed by an ERISA-governed severance benefits plan "may presage an insurmountable obstacle to Plaintiffs."  Mem. & Order, ECF No. 31, p. 7.  The Court afforded Plaintiff the opportunity to conduct discovery to determine "what ERISA plan, if any, was in place during [Plaintiff's] tenure at Altice, and whether they were beneficiaries under such plan."  *Id.*

The evidence in the record establishes that Plaintiff's entitlement to severance benefits is governed by the Cablevision Severance Pay Plan, an ERISA-governed Plan that existed before, during, and after Plaintiff's employment with an Altice subsidiary. The undisputed evidence also establishes that Plaintiff was never a participant in the Severance Plan. As a result, Altice is entitled to summary judgment on Plaintiff's claims because: (1) his state law claims are preempted by ERISA; (2) he cannot assert ERISA claims because he was never a participant under the Severance Plan; and (3) even if he could establish standing, Altice is

entitled to summary judgment on Plaintiff's ERISA claims because he never requested plan documents from the Plan Administrator and never exhausted the Plan's administrative remedies.

## BACKGROUND

### I.   UNDISPUTED FACTS.[1]

#### A.   The Severance Plan and the Severance Benefits Policy.

Beginning in 1994, Cablevision Systems Corporation (or its subsidiary CSC Holdings, LLC) (collectively "Cablevision") sponsored the Cablevision Severance Pay Plan (hereinafter "Severance Plan" or "Plan").  *See* Def. 56.1 ¶ 1.  The Severance Plan is governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  *Id*., at ¶ 2.

Effective June 21, 2016, Cablevision Systems Corporation and Altice N.V. merged.[2]  *Id*. at ¶ 3.  The parties to the merger agreed that the employee benefit plans in place at the time of the merger would remain intact, including the Oct. 1, 2013 Cablevision Severance Pay Plan/SPD.  *Id*. at ¶¶ 4-5.  After the close of the merger, Altice became the corporate parent of Cablevision Systems Corporation and numerous other subsidiaries.  *Id*. at ¶ 6.  After the merger closed, employees of Altice's subsidiaries referred to the organization as "Altice USA."  *Id*. at ¶ 9.

In January 2017, Altice published a Severance Benefits Policy for its United States employees (including employees of subsidiaries) who were not covered by a Collective Bargaining Agreement.  *Id*. at ¶ 10.  The Severance Policy informs employees that if their employment is terminated, for certain specific reasons, they may be eligible for severance benefits.  *Id*. at ¶ 13.  The Severance Policy states that "[f]rom time to time, there may be

---

[1] Defendant incorporates by reference its Statement of Undisputed Material Facts pursuant to Local Rule 56.1 ("Def. 56.1").

[2] The merger between Cablevision Systems Corporation and Altice N.V. was consummated by creating a merger subsidiary that was wholly owned by Altice N.V.  The facts that are material to this case, especially the fact that the merger did not change any employee benefit plans, are established by the evidence submitted in support of Defendant's Rule 56.1 Statement.

circumstances when a position is eliminated due to restructuring or reorganization" and that under these particular circumstances, Altice is committed to provide employees with severance benefits to support their transition.  *Id*. at ¶ 14.

The Severance Benefits Policy specifically states that it is "governed by the Company's ERISA-covered severance pay plan and the associated plan document/summary plan description."  *Id*. at ¶ 15.  The Severance Policy refers to, and is governed by, the Cablevision Severance Pay Plan and Summary Plan Description ("the Oct. 1, 2013 Severance Plan/SPD."). *Id*. at ¶ 11.  The Severance Policy also states: "[i]f you would like to receive a copy please speak with your local Human Resources contact."  *Id*. at ¶ 16.  If an employee requested a copy of the "ERISA-covered severance pay plan" referenced in the Severance Policy, the Human Resources department would have provided the Oct. 1, 2013 Severance Plan/SPD.  *Id*. at ¶ 17.

The Severance Plan was established to "provide for *discretionary* payment by the Company of severance benefits under certain circumstances." *Id*. at ¶ 19.  The Severance Plan is administered by the Cablevision Investment & Benefits Committee ("Committee").  *Id*. at ¶ 20. The Committee has the "full authority, in its absolute discretion, to administer the Plan, including the authority to interpret, construe, and apply provisions of the Plan…and decide all matters arising in connection with the operation or administration of the Plan." *Id.*

An employee is eligible to participate in the Plan "*only if designated in writing as such by the Committee or its authorized designee, in such party's sole discretion*."  *Id*. at ¶ 21. An employee who is "not designated as eligible to participate . . . shall not be entitled to any benefit under the Plan."  *Id.*  Importantly, "[n]o employee may rely on *any* notification of entitlement to any severance benefit from the Plan other than a written notification delivered to the employee from the Committee or authorized designee."  *Id.*

The Committee has the *sole discretion* to determine: (a) under what conditions severance benefits shall be available to any Employee; (b) the particular type and amount of severance benefits that shall be made available and the duration thereof; (c) the manner and form in which such severance benefits that shall be paid or provided to any Employee; and (d) any other applicable terms and conditions for receiving and retaining severance benefits. *Id*. at ¶ 22. To that end, the Plan makes clear that severance benefits are "discretionary benefits only," and the Committee has the right "with respect to any Employee *not* to provide any severance benefits or to provide benefits that differ in amount or terms and conditions with respect to different Employees." *Id*. at ¶ 23.

### B. The Severance Plan Was in Place Before, During, and After Plaintiff's Employment.

Plaintiff was employed by an Altice subsidiary from September 2017 to July 2018. *See* Def. 56.1 ¶ 34. The Severance Plan is the only severance pay plan that was applicable to employees of Defendant and its subsidiaries during Plaintiff's employment. *Id*. at ¶ 35.

In 2017, Altice USA replaced CSC Holdings, LLC as the sponsor of the Severance Plan. *Id*. at ¶ 8. In 2017, when a 2016 Form 5500 was filed on behalf of the Severance Plan, Altice intended to move the Severance Plan under an Altice USA benefits "wrap" plan (which would not have changed the terms of the Plan). *Id*. at ¶ 26. As a result, the 2016 Form 5500 indicated that it was the "final return/report" for the Severance Plan and that there were "0" participants. *Id*. at ¶ 27. The Severance Plan was not actually moved under an Altice USA benefits "wrap" plan until 2019. *Id*. at ¶ 28.

No action was taken by Altice to change or terminate the Severance Plan during Plaintiff's employment. *Id*. at ¶ 36. The Severance Plan was not terminated in 2016 and continues to operate today. *Id*. at ¶ 29. From January 1, 2016 through July 31, 2019, 4,950 individuals received severance benefits pursuant to the Severance Plan. *Id*. at ¶ 30.

The terms of the Oct. 1, 2013 Severance Plan/SPD did not change from October 2013 through 2019.  *Id*. at ¶ 31.  Although published after Plaintiff's employment, the 2019 "Altice USA Severance Pay Plan and Summary Plan Description" makes clear that:

> **Purpose of the Plan.**  The Altice USA Severance Pay Plan (previously called the Cablevision Choice Severance Pay Plan) (the "Plan") was established by Cablevision Systems Corporation (now known as CSC Holdings, LLC) effective as of May 1, 1994, and adopted by Altice USA (the "Company") effective January 1, 2017.

*Id*. at ¶¶ 32-33.

### C.   Plaintiff Was Not Designated as a Participant Under the Plan and He Did Not Exhaust the Plan Remedies.

Plaintiff was not designated as a participant under the Plan by the Committee when his employment was terminated.  *Id*. at ¶ 37.  Plaintiff never requested a copy of any documents related to the Severance Plan.  *Id*. at ¶ 38.  Plaintiff also never made a claim for severance benefits pursuant to the administrative claim procedures under the Severance Plan.  *Id*. at ¶ 39.

## II.   PROCEDURAL POSTURE.

On July 26, 2020, Plaintiff filed a Second Amended Complaint ("SAC").  *See* SAC, ECF No. 15.  The SAC asserts five counts—two under state law, and the remaining three (in the alternative) under ERISA.  Counts I and II assert claims under breach of contract and promissory estoppel, respectively.  Count III asserts a claim for wrongful denial of benefits under ERISA § 502(a)(1)(B.  Count IV asserts a claim for failure to produce plan documents under ERISA § 502(a)(1)(A).  Count V asserts a claim for breach of fiduciary duty under ERISA § 502(a)(3).

On September 3, 2019, Defendant moved to dismiss Plaintiff's SAC because Plaintiff sought benefits from an ERISA-governed severance benefits plan.  *See* Def.'s Mot. to

Dismiss, ECF No. 24.  Defendant argued that: (1) Plaintiff's state law claims were preempted by ERISA; (2) Plaintiff lacked standing under ERISA; (3) Plaintiff failed to exhaust the administrative remedies under the ERISA-governed Severance Plan; and (4) Plaintiff's claim for breach of fiduciary duty under Section 503(a)(3) was duplicative of the other ERISA claims.

The Court determined that the issue of the applicability of the Severance Plan to Plaintiff's claims could not be determined on a Motion to Dismiss.  *See* Mem. & Op., ECF No. 31.  The Court, however, recognized that the "Altice Policy's language that 'severance guidelines are governed by the Company's ERISA-covered severance pay plan and the associated plan document/summary plan description' may presage an insurmountable obstacle to Plaintiffs." *Id*. at p. 7.  The Court afforded Plaintiff the opportunity to take modest discovery on what ERISA plan, if any, was in place during Plaintiff's employment with Defendant and whether Plaintiff was a Plan participant.  *Id.*

The parties exchanged written discovery as to the existence (and applicability) of the ERISA-governed Severance Plan.  Plaintiff elected not to take depositions of any of Defendant's witnesses.

## **SUMMARY JUDGMENT STANDARD.**

The principal purpose of summary judgment is to dispose of meritless claims before engaging in a frivolous and costly trial.  *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9 (2d Cir. 1986), *cert. denied*, 480 U.S. 932 (1987) (*citing Quinn v. Syracuse Model Neighbourhood Corp.,* 613 F.2d 438, 445 (2d Cir. 1980)).  Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (*quoting* Fed. R. Civ. P. 1).  Summary judgment is appropriate when "there is no genuine issue as to any material fact and … [the moving party] is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The party moving for summary judgment bears the burden of "show[ing] that there is no genuine issue of material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When defendant moves for summary judgment on claims for which plaintiff bears the burden at trial, the moving defendant may "satisfy their burden of production under Rule 56 by negating an essential element of Plaintiff's claim."  *See DeRogatis v Bd. of Trs. of the Welfare Fund of the Int'l Union of Operating Eng'rs Local 15 (In re DeRogatis)*, 904 F.3d 174, 187  (2d Cir. 2018).  Defendant may negate an essential element of plaintiff's claim by either "submitting undisputed evidence to that effect or by demonstrating the insufficiency of the plaintiff's own evidence."  *Id*.  A litigant's "'bald assertion,' completely unsupported by evidence, is insufficient to overcome a motion for summary judgment."  *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

Here, the undisputed evidence demonstrates that the ERISA-governed Severance Plan existed during Plaintiff's employment, and was the sole means by which severance benefits were offered to eligible participants.  As such, Plaintiff's SAC should be dismissed because: (1) his state law claims are preempted by ERISA; (2) he lacks standing to assert ERISA claims because he was never a Plan participant; and (3) even if he can establish participant status— which he cannot—his ERISA claims should be dismissed nevertheless because he never requested plan documents from the Plan Administrator and never exhausted the Plan's administrative remedies.

## **ARGUMENT**

## I.     **THE SEVERANCE BENEFITS POLICY IS GOVERNED BY THE SEVERANCE PLAN.**

Plaintiff was furnished with a copy of the Severance Policy.  *See* Def. 56.1 ¶ 18.  The Severance Policy told Plaintiff that severance benefits were governed by an ERISA-

governed plan, and also offered to provide that Plan upon request. *Id*. ¶¶ 15-17. Thus, it is undisputed that the ERISA-governed Severance Plan existed at the time of Plaintiff's employment, that Plaintiff was told about it, and that Plaintiff was offered a copy of it. Plaintiff's claims are thus indisputably subject to the ERISA-governed Severance Plan.

Ignoring the fact that the Severance Policy, on which he bases his claims, says it is governed by the Severance Plan, Plaintiff has attempted to create doubt about the existence of the Severance Plan. Plaintiff argues "it is simply impossible that Cablevision's Severance Pay Plan was applicable to anyone in 2017 or 2018." Pl.'s Resp. to Def.'s Summ. J. Correspondence, Sept. 25, 2020, ECF No. 49. Plaintiff's argument is based entirely on misapprehending the import of a Form 5500.

ERISA § 103 requires an annual report for every employee benefit plan that is subject to the reporting and disclosure requirements of Title I of ERISA. *See* 29 U.S.C. § 1023; ERISA § 103. The annual reporting requirements can be satisfied by filing a single annual report on Form 5500 with the Department of Labor.

Although failing to file a Form 5500 may lead to civil penalties, it does not lead to plan termination. *See Wenzel v. Amalgamated Bank*, No. 93 Civ. 2364, 1996 U.S. Dist. LEXIS 9947, *15 (S.D.N.Y. July 8, 1996) (rejecting argument that failure to comply with ERISA's "technical requirements"—including filing Form 5500s, nullified an ERISA plan). Courts have uniformly held that an employer's failure to comply with ERISA's reporting and disclosure requirements "does not eviscerate ERISA coverage of a plan if one, in fact, has been established, or evince the lack of a plan in the first instance." *See Wickman v. Nw. Nat'l Life Ins. Co.*, No. 86-1895-WF, 1987 U.S. Dist. LEXIS 9633, at *9 (D. Mass. Oct. 22, 1987); *see also Gilbert v. Burlington Indus., Inc.*, 765 F.2d 320, 328-29 (2d Cir. 1985) (failing to adhere to ERISA's reporting requirements does not estop defendant from asserting preemption).

It is undisputed that the Severance Plan was not terminated and it continues to operate today.  *See* Def. 56.1 ¶¶ 29-30, 36.  It is also undisputed that the Form 5500 at issue indicated that it was the "final return/report" for the Severance Plan, and the Severance Plan had "0" participants, because Altice intended to move the Severance Plan under a benefits "wrap plan."  *Id*. at ¶¶ 26-27.  The Severance Plan was not actually moved under an Altice USA benefits "wrap plan" until 2019.  *Id*. at ¶ 28.  Regardless, the same Severance Plan was operating and providing severance benefits to eligible employees during Plaintiff's tenure with Altice.

Despite having the opportunity to take discovery, Plaintiff cannot produce any evidence that would create an issue of fact as to whether the Severance Plan was terminated. The undisputed evidence establishes that the Severance Plan was the sole avenue by which Defendant paid severance benefits at the time Plaintiff's employment was terminated.  As a result, Plaintiff's claims are subject to ERISA.

## II.   COUNTS I AND II ARE PREEMPTED BY ERISA.

### A.   Plaintiff's State Law Claims "Relate to" an ERISA-governed Severance Plan.

A primary goal of ERISA is to establish a uniform body of federal law governing the administration of employee benefit plans.  *See New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655-57 (1995); *Dedeaux*, 481 U.S. at 52-53. ERISA was enacted by Congress to "protect . . . the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."  29 U.S.C. § 1001(b).  ERISA's purpose is to provide a uniform regulatory scheme for employee benefit plans.  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).

This breadth of ERISA preemption has been long recognized in the Second Circuit, which has held:

> The purpose for the preemption clause is to avoid a multiplicity of regulation and to enforce a uniform administration of employee benefit plans. The clause is meant to prevent the courts from creating an alternate enforcement mechanism for contesting a denial of benefits to the plaintiff's remedies. Allowing certain remedies under state law would undermine the policy choices made pursuant to ERISA.

*Cacoperdo v. Hartford Life Ins. Co.*, 10 Civ. 7847 (RPP), 2011 U.S. LEXIS 115003, at *12 (S.D.N.Y. Oct. 5, 2011) (citations omitted).

ERISA's preemption provision is recognized as "the most sweeping federal preemption statute ever enacted by Congress." *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 68 (4th Cir. 1988) (quotation omitted). ERISA's preemption provision declares that ERISA shall "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). State law preempted by the statute is defined as including "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). Thus, if Plaintiff's state law claims "relate to" an employee benefit plan (as they do here), the claims are preempted by ERISA.

The phrase "relate to" was interpreted by the Supreme Court and "given its broadest common-sense meaning, such that a state law 'relates to' a benefit plan . . . 'if it has a connection with or reference to such a plan.'" *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985) (quoting *Shaw v. Delta Airlines*, 463 U.S. 85, 97 (1983)). The Supreme Court further emphasized that the preemption clause was not limited to "state laws specifically designed to affect employee benefit plans." *Shaw*, 463 U.S. at 97. Regardless of whether the "connection with" or "reference to" is direct or indirect, the state law will be preempted. *See Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 525 (1981).

The Supreme Court has set forth a two-part test to determine whether a claim falls within the civil enforcement provision of ERISA. "[C]laims are completely preempted by ERISA if they are brought (i) by 'an individual [who] at some point in time, could have brought his claim under ERISA § 502(a)(1)(B),' and (ii) under circumstances in which 'there is no other independent legal duty that is implicated by a defendant's actions.'" *Montefiore*, 642 F.3d at 328. (quoting *Davila*, 542 U.S. at 210). The Second Circuit has clarified that under the first prong of *Davila*, a claim is preempted by ERISA where the plaintiff "is the type of party who can bring a claim pursuant to § 502(a)(1)(B) of ERISA; and (b) the actual claim asserted can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 299 (2d Cir. 2012) (citations omitted). Where both of the *Davila* factors are satisfied— including the two sub-parts to *Davila's* first prong—ERISA will completely preempt the state law claim. *Id.* (citations omitted).

In this instant case, Plaintiff's state law claims are completely preempted because Plaintiff is seeking to supplant ERISA's exclusive enforcement provision in § 502(a) through state law breach of contract and quasi contract claims. *See Davila*, 542 U.S. at 209, 2016. ERISA's preemptive reach extends to state law causes of action that "relate to" ERISA plans "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990).

A multitude of courts, including the U.S. Supreme Court and the Second Circuit, uniformly hold that ERISA preempts state law claims such as those asserted by Plaintiff. *See, e.g.*, *Smith v. Dunham-Bush, Inc.*, 959 F.2d 6 (2d Cir. 1992) (holding ERISA preempts employee's breach of contract and promissory estoppel claims); *In re Estate of Grant v. Interface Solutions, Inc.*, 11-cv-1452, 2012 U.S. Dist. LEXIS 46082, at *13 (N.D.N.Y Apr. 2, 2012) ("It is well-settled that claims for breach of contract arising out of employee benefit plans, like all other

11

state law causes of action relating to employee benefit plans, are conclusively preempted by ERISA).

Indeed, regardless of terminology, <u>any</u> state law claim is preempted if it "arise[s] directly out of an allegedly wrongful administration of benefits." *Marcella v. Capital Dist. Physicians Health Plan, Inc.*, 47 F. Supp. 2d 289, 292 (N.D.N.Y 1999), *rev'd. on other grounds*, 293 F.3d 42 (2d Cir. 2002); *see also Martori Brothers Distributors v. James-Massengale*, 781 F.2d 1349, 1356-57, 1357 n.19 (9th Cir. 1986) ("laws and common-law rules that provide remedies for misconduct growing out of the administration of the ERISA plan" are preempted by ERISA).

Based on the interpretation given the phrase "relate to" by the Supreme Court, the claims asserted in Plaintiff's SAC clearly arise out of the administration of an employee benefit plan and "relate to" an employee benefit plan.  Each of these state law causes of action rest on allegations that Plaintiff's claim for benefits was wrongfully denied.  In fact, each state law claim refers to and depends on the denial of benefits at Plaintiff's termination.  *See* SAC, *passim*. Accordingly, these Causes of Action are each preempted by ERISA.

**B.  Plaintiff's State Law Claims Are Preempted Because They Are Predicated Upon Defendant's Denial Of Benefits.**

**1.  Plaintiff's Claims Further Satisfy *Davila* Because They Qualify As "Colorable Claims."**

Plaintiff's state law causes of action are predicated upon Defendant's denial of severance benefits under the Plan, and therefore, "implicate coverage and benefits established by the terms of the ERISA benefit plan and can be construed as colorable claim[s] for benefits" under ERISA.  *See Arditi*, 676 F.3d at 299 (internal quotations and citations omitted).  Both Plaintiff's First Cause of Action (breach of contract) and Second Cause of Action (promissory estoppel) seek damages in the form of monetary benefits under the Plan, which is a colorable

claim "to recover benefits due to him under the terms of his plan. . . ." 29 U.S.C. § 1132(a)(1)(B). Each of these claims could be construed as a claim "to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Therefore, as alleged, each of these causes of action could be construed as a colorable claim under ERISA, and further satisfy the first prong of *Davila*.

### 2. Plaintiff's Allegations Do Not Implicate Any Other Independent Legal Duty Beyond the Plan.

The second prong of *Davila* is also satisfied because "there is no other independent legal duty that is implicated by [the] [D]efendant[s'] actions." *Davila*, 542 U.S. at 2010. As explained by the Second Circuit, the question is "whether some other, completely independent duty forms <u>another</u> basis for legal action." *Montefiore*, 642 F.3d at 332. In situations, where the claim is "inextricably intertwined with the interpretation of Plan coverage and benefits," the claim will be preempted because the claim does not impose upon the Defendants a "sufficiently *independent* duty under *Davila*." *Montefiore*, 642 F.3d at 332.

Here, Plaintiff's state law claims do not arise independently of Defendant's duties under the Plan, because they are inextricably intertwined with an interpretation of the Plan itself. Indeed, Plaintiff's First Cause of Action (breach of contract) and Plaintiff's Second Cause of Action (promissory estoppel) expressly refer to Plaintiff's rights to the benefits under the Plan, *i.e.*, that Plaintiff was purportedly denied his entitled benefits under the Plan. Thus, theses Causes of Action listed in the SAC are "inextricably intertwined with the interpretation" of the Plan and do not implicate "some other, completely independent duty" of the Defendant.

Accordingly, the second prong of *Davila* is satisfied and Plaintiff's state law claims are completely preempted by ERISA and should be dismissed.

## III.   THE REMAINING CLAIMS UNDER ERISA (COUNTS III - V) SHOULD BE DISMISSED FOR LACK OF STANDING.

To assert a claim under ERIS Section 502, a Plaintiff *must* be a participant or beneficiary.  Plaintiff was never a participant or beneficiary of the Severance Plan.  As a result, Plaintiff fails to state a claim under ERISA because he lacks standing.

According to § 502(a) of ERISA:

> (a) . . . A civil action may be brought --
>     (1) by a participant or beneficiary . . .
>       (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan [or]; . . .
>     (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . .

29 U.S.C. §§ 1132(a).

Under the explicit language of the statute, a plaintiff only has standing to sue under ERISA § 502(a) if he demonstrates that he was a "participant or beneficiary."  *Id.*  Here, Plaintiff fails to do so and thus lacks standing to bring these claims.  *See, e.g.*, *Protocare of Metro. N.Y. v. Mutual Ass'n Adm'rs*, 866 F. Supp. 757, 760 (S.D.N.Y. 1994) ("Under § 502(a) of ERISA, three classes of persons have standing to bring a civil action under ERISA: a participant or beneficiary, the Secretary of Labor, and a fiduciary. . . .  The Second Circuit has interpreted this list to be exclusive, unless some indication of legislative intent can be found to grant additional parties standing.  No such legislative intent, however, has been discovered." (internal quotations and citations omitted)).

As the Supreme Court makes clear, the plan document governs enforcement of the plan.  *Cigna Corp. v. Amara*, 563 U.S. 421 (2011); *see also Gill v. Bausch & Lomb Supplemental Ret. Income Plan I*, 594 Fed. Appx. 696 (2d Cir. 2014) ("*Amara* instructs a district

court to limit itself to the simple enforcement of a contract as written. . . ." (internal quotations and citations omitted)).  While Plaintiff purports to ignore the Severance Plan document, it creates and governs his rights to severance benefits.  The Plan includes a specific section on eligibility.  *See* Article III of the Plan.  Article III states:

> An employee of the Company or any affiliate shall be eligible to participate in the Plan *only if designated in writing* as such by the Committee or its authorized designee, in such party's *sole discretion*.  An employee who is *not so designated as eligible to participate hereunder <u>shall not</u> be entitled to any benefits under the Plan*.  No employee may rely on any notification of entitlement to any severance benefit from the Plan other than a written notification delivered to the employee from the Committee or authorized designee.  An employee so designated as eligible to participate in the Plan shall be referred to herein as an "Employee."

*See id.* (emphasis added).

Plaintiff cannot produce evidence that he is a participant or beneficiary under the Severance Plan.  Plaintiff did not receive a designation in writing that would make him eligible for benefits under the Severance Plan.  Plaintiff has not provided any evidence establishing his participant-status because he cannot do so—he simply was never designated as a beneficiary or participant under the Severance Plan.  As claims under ERISA § 502 must be brought by a participant or beneficiary, Plaintiff lacks standing to bring such a claim against Defendant.

## IV.   EVEN IF PLAINTIFF WAS A PARTICIPANT—HIS ERISA CLAIMS ARE STILL SUBJECT TO DISMISSAL.

Even if Plaintiff had standing to sue under ERISA, his claims are subject to dismissal because (A) he never exhausted the Plan's administrative procedures; (B) he never requested plan documents from the Plan's Administrator; and (c) his claim under ERISA § 502(a)(3) is duplicative.

A.   **Count III Should Be Dismissed Because Plaintiff Never Exhausted The Plan's Administrative Procedures.**

Plaintiff's Third Cause of Action under ERISA § 502(a)(1)(B) for wrongful denial of severance benefits must be dismissed because he did not exhaust the administrative remedies available under the Severance Plan prior to filing suit.

ERISA requires that "every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations." *Klotz v. Xerox Corp.*, 332 Fed. Appx. 668, 669 (2d Cir. 2009) (internal quotations and citations omitted); *see also Zarringham v. UFCW Local 1500 Welfare Fund*, 906 F. Supp. 2d 140, 152-53 (E.D.N.Y. 2012) ("ERISA requires employee benefit plans to provide an internal review procedure for arising plan participant disputes.")  The Severance Plan provides for the administrative procedures required under ERISA:

> An Employee claiming a benefit under the Plan that has been denied for any reason may file a written claim with the Committee within 60-days of the Employee's termination of employment. The Employee will be notified in writing within 90 days after the claim is filed (or the Employee will receive a writing notice within such 90 days stating an additional 90 days is needed to rule upon the claim, in which case the Employee will receive a written notice within 180 days).  If the claim is denied, the notification will (a) indicate the reasons for the denial and cite the specific Plan provisions on which the denial is based; (b) describe any additional information that may be needed for approval of the Employee's claim; and (c) explain the review procedure.

Def. 56.1 ¶ 25.

Exhausting the administrative remedies provided by an employee benefit plan is a mandatory prerequisite to filing suit for a wrongful denial of benefits.  *See Zarringham*, 906 F. Supp. 2d at 152-53 (E.D.N.Y. 2012) ("A plan participant must exhaust such procedures before resorting to the courts.")  Courts in the Second Circuit recognize that "[t]his requirement remains

firm, even if a plan participant is unaware of that plan's administrative procedures." *See Zarringham*, 906 F. Supp. at 152 ("A failure to exhaust administrative remedies provides grounds for dismissal or summary judgment in favor of the opposing party.")

Again, it is undisputed that Plaintiff was furnished with a copy of the Severance Policy, which put him on notice that severance benefits were governed by an ERISA-governed plan, and also offered to provide that Plan upon request. *See* Def. 56.1 ¶¶ 15-18.  Plaintiff claims he "requested, and was specifically denied his severance, contrary to the [] Severance Benefits Policy." SAC ¶ 25.  But Plaintiff does not claim that he utilized the administrative procedures provided by the Severance Plan.

Plaintiff cannot salvage his wrongful denial of benefits claim by asserting that he was unaware of the Plan document or unaware of the administrative requirements in making a request for benefits.  *Compare Zarringham*, 906 F. Supp. at 152 ("This requirement remains firm, even if a plan participant is unaware of that plan's administrative procedures.")  *with* SAC ¶¶ 11-12, 24-25, 37-57(allegations in the SAC regarding plaintiff's ignorance of the Plan). Therefore, Altice is entitled to summary judgment on Plaintiff's wrongful denial of benefits claim under ERISA § 502(a)(1)(B).

**B.    Count IV Should Be Dismissed Because Plaintiff Never Requested Plan Documents From The Plan Administrator.**

Count IV makes a claim under ERISA § 502(a)(1)(A) for failure to provide ERISA plan documents.  *See* SAC, ECF No. 15, ¶¶ 43-49.  ERISA § 502(a)(1)(A) allows participants or beneficiaries to seek relief under ERISA § 502(a)(c), which in turn allows participants to seek a penalty against the Plan's Administrator for failing to produce the documents identified under ERISA § 104(b)(4).  *See D'Iorio v. Winebow, Inc.*, 920 F. Supp. 2d 313, 318 (E.D.N.Y. Jan. 18, 2013).  ERISA § 104(b)(4) requires that "the [plan] administrator[,] [] upon written request of any participant or beneficiary, furnish a copy of the latest updated

summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4); ERISA § 104(b)(4).  The request for documents delineated under ERISA § 104(b)(4) must be made by (1) a participant or beneficiary (2) to the Plan Administrator.  *Id.*

During Plaintiff's employment the Cablevision Investment & Benefits Committee (the "Committee") was the Plan Administrator for the Severance Plan.  *See* Oct. 2013, Severance Plan/SPD, p. 5, Ex. 1-A.  Plaintiff never alleges that he requested Plan documents from the Committee, nor has he produced any evidence of such a request during discovery.  Therefore, unless Plaintiff can demonstrate that he (as a participant) requested the Plan documents (from the Committee), Count IV must be dismissed as a matter of law.

## C. Count V Should Be Dismissed Because It Is Duplicative of Counts III and IV.

Plaintiff's Fifth Cause of Action is an attempt to obtain the exact same remedy requested in Counts III and IV.  Count V is based on the theory that Plaintiff was wrongfully denied severance benefits under the Severance Plan (just like Count III) and that Defendant failed to provide him with plan documents (just like Count IV).

A claim under § 1132(a)(3) may be raised only when other adequate remedies are not available to the complaining party.  *Varity Corp v. Howe*, 516 U.S. 489, 515 (1996) (affirming district court's judgment that plaintiffs' had no benefits due to them under the plan); *Biomed Pharms., Inc. v. Oxford Health Plans (NY), Inc.*, 775 F. Supp. 2d 730, 738 (S.D.N.Y. 2011) (holding that since the "gravamen" of plaintiff's ERISA claims involve the alleged improper denial of benefits, the claims were dismissed).  Therefore, even if the Court finds that Plaintiff has standing to bring these claims—which he does not—Plaintiff's claim for equitable

relief under ERISA § 502(a)(3) should still be dismissed because it is duplicative of Counts III and IV.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests this Court issue an order granting its motion for summary judgment, dismissing Plaintiff's action in its entirety, with prejudice, and awarding all such other and further relief that this Court may deem just, proper, and equitable.

Dated: Melville, New York
            November 6, 2020

                                        Respectfully submitted,

                                        JACKSON LEWIS P.C.
                                        *Attorneys for Defendant*
                                        58 South Service Road, Suite 250
                                        Melville, New York 11747
                                        (631) 247-0404

                                        By:  /s/ *Brendan Sweeney*

                                             Brendan Sweeney, Esq.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 6, 2020, I caused a true and correct copy of **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** to be served via email to the following:

**Andrew J. Dressel**
Dressel/Malikschmitt LLP
11 East Cliff Street
Ste Ground Floor Somerville, NJ 08876
848-202-9323
Email: andrew@dresselmalikschmitt.com


 s/Brendan Sweeney
BRENDAN SWEENEY